## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
11/20/2019

| | |
|---|---|
| In re: | Chapter 11 |
| APPROACH RESOURCES INC., *et al*., | Case No. 19-36444 (MI) |
| Debtors.[1] | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II)  GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the *Emergency Motion of Debtors for Entry of Orders (I) Authorizing Limited Use of Cash Collateral on an Interim Basis; (II) Obtaining Postpetition Credit Secured by Senior Liens Upon Entry of a Final Order; (III) Granting Adequate Protection; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Financing Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), requesting, *inter alia*, pursuant to sections 105, 361, 362(d), 363(c), 364(c)(1), 364(c)(2), 365(c)(3), 364(d)(1), 503(b), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Approach Resources Inc. (4817); Approach Midstream Holdings LLC (4122); Approach Oil & Gas Inc. (7957); Approach Operating, LLC (1981); Approach Delaware, LLC (7483); Approach Services, LLC (3806); and Approach Resources I, LP (5316).  The Debtors' mailing address is One Ridgmar Centre, 6500 West Freeway, Suite 800, Fort Worth, Texas 76116.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Financing Motion.

(a)     entry of an interim order (the "Interim Order") providing:

    (i)     authority for the Debtors to use Cash Collateral (as defined below) of JPMorgan Chase Bank, N.A., in its capacity as administrative agent (in such capacity, the "Prepetition Agent") for itself and for and on behalf of the other lenders from time to time party to the Prepetition Credit Agreement (as defined below) (in such capacity, the "Prepetition Lenders" and together with the Prepetition Agent, the Issuing Bank, the Bank Products Providers and Secured Swap Providers (each as defined in the Prepetition Credit Agreement defined below), the "Prepetition Secured Parties") in accordance with the terms and conditions set forth herein;

    (ii)    the grant of superpriority claims and the grant of automatically perfected liens, security interests, and other adequate protection to the Prepetition Agent with respect to its interests in the Prepetition Collateral (as defined below) and the Adequate Protection Collateral (as defined below); and

    (iii)   modification of the automatic stay of section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent provided herein; and

    (iv)    a waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of the Interim Order and providing for the immediate effectiveness of the Interim Order;

(b)     scheduling the Final Hearing (as defined below) within thirty (30) days of the Petition Date and approving notice with respect thereto in accordance with Bankruptcy Rule 4001(c)(2); and

(c)     entry of a final order providing:

    (i)     approval of the relief granted in this Interim Order on a final basis;

    (ii)    authority for Debtor Approach Resources Inc. (the "Borrower") to obtain, and its subsidiary Debtors (collectively, the "Guarantors") to guaranty, post-petition debtor-in-possession credit financing in an aggregate principal amount of up to $41,250,000 from (i) JPMorgan Chase Bank, N.A. in its capacity as the post-petition agent (in such capacity, the "DIP Agent", and together in its capacity as the Prepetition Agent, the "Agent") under that certain *Senior Secured Super Priority Debtor-in-Possession Credit Agreement* (the "DIP Credit Agreement")[3] and (ii)  the Prepetition Lenders that are party to the DIP Credit Agreement (in their capacity as post-petition lenders under the DIP Credit Agreement, collectively, the "DIP Lenders", and together in their capacity as Prepetition Lenders, the "Lenders", and the DIP Lenders together with the DIP Agent, the Issuing Bank, the Bank Products Providers and Secured Swap Providers (each as defined in the DIP

---

[3]  A copy of the DIP Credit Agreement is attached to the Financing Motion as **Exhibit C**.

Credit Agreement), the "<u>DIP Secured Parties</u>"), consisting of (A) new money revolving credit in an amount not to exceed $16,500,000 as provided in the DIP Credit Agreement (the "<u>Revolving DIP Loans</u>"), and (B) roll-up loans to refinance the Prepetition Claim (as defined below) in the amount up to $24,750,000 on a final basis (the "<u>Roll-Up Loans</u>") (the Revolving DIP Loans, collectively with the Roll-Up Loans being the "<u>DIP Loans</u>"), in accordance with the terms and conditions set forth in the Final Order (as defined below), the DIP Credit Agreement and the DIP Documents (as defined below) (collectively, the "<u>DIP Credit Facility</u>")[4];

(d)     authority for the Debtors to execute, deliver, and perform under the DIP Credit Facility and DIP Documents, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the Debtors to the DIP Agent on account of the DIP Credit Facility (all obligations and indebtedness of any of the Debtors to the DIP Secured Parties under the DIP Documents (including, without limitation the DIP Loans) as set forth in the definition of "Indebtedness" in the DIP Credit Agreement" collectively, the "<u>DIP Obligations</u>") or granting or perfecting liens or security interests by any of the Debtors in favor of and for the benefit of the DIP Agent on account of the DIP Credit Facility, as the same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, the "<u>Loan Documents</u>" (as defined in the DIP Credit Agreement), and any and all of the other agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the Debtors, the DIP Agent, and the DIP Lenders (collectively, the "<u>DIP Documents</u>");

(e)     authority for the indefeasible transfer of Cash Collateral to and for the benefit of the DIP Agent;

(f)     the grant of (i) automatically perfected, first-priority priming liens and security interests in the Collateral (as defined in the Final Order) and (ii) superpriority claims with priority over all other administrative expense claims and other postpetition claims against the Debtors' and their estates, to the DIP Agent to secure the DIP Obligations; and

(g)     approval of the terms and conditions of the DIP Credit Facility and the DIP Documents.

---

[4] Pending entry of the Final Order, the Agent will hold the signatures of the DIP Lenders and Debtors to the DIP Credit Agreement and related fee letter (the "<u>DIP Credit Agreement Signatures</u>") in irrevocable escrow such that they cannot be withdrawn pending approval and entry of the Final Order, provided that no Event of Default (as defined below) shall have occurred and be continuing.  Upon approval and entry of the Final Order, and provided that no Event of Default shall have occurred and be continuing, the Agent will release the DIP Credit Agreement Signatures.

The Bankruptcy Court having considered the Financing Motion, the *Declaration of Kevin L. Larin in Support of Emergency Motion of Debtors for Entry of Orders (I) Authorizing Limited Use of Cash Collateral on an Interim Basis; (II) Obtaining Postpetition Credit Secured by Senior Liens Upon Entry of a Final Order; (III) Granting Adequate Protection; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief;* the *Declaration of Alexander Svoyskiy in Support of Emergency Motion of Debtors for Entry of Orders (I) Authorizing Limited Use of Cash Collateral on an Interim Basis; (II) Obtaining Postpetition Credit Secured by Senior Liens Upon Entry of a Final Order; (III) Granting Adequate Protection; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief*, and the evidence submitted at the interim hearing held before this Bankruptcy Court on November 19, 2019, to consider entry of this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b) and (d), 6004, and 9014 and the Bankruptcy Local Rules, due and proper notice of the Financing Motion and the Interim Hearing having been given; and it appearing that approval of the interim relief requested in the Financing Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing (as defined below) and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Bankruptcy Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.      The Debtors and the Prepetition Agent have stipulated and agreed as follows, and based upon the pleadings and evidence presented at the Interim Hearing before this Bankruptcy Court, this Bankruptcy Court hereby acknowledges such stipulations, and grants the relief herein,

on an interim basis, pursuant to Bankruptcy Rule 4001 to prevent immediate and irreparable harm to the Debtors and their estates.  Therefore, consistent with sections 361, 362, 363, 503(b), and 507 of the Bankruptcy Code, this Bankruptcy Court hereby finds and orders:

<u>OPPORTUNITY TO OBJECT</u>

2.      Pursuant to Bankruptcy Rule 4001(d)(2), any objection to the entry of a final order in the form attached as **Exhibit B** to the Financing Motion (the "<u>Final Order</u>") must be filed on or before 4:00 p.m. Central Time on December 10, 2019 (the "<u>Objection Deadline</u>").  A final hearing on the Financing Motion shall take place on December 13, 2019, at 1:30 p.m. Central Time before the Honorable Marvin Isgur, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"), Houston Division, 515 Rusk Street, Courtroom 404, Houston, Texas 77002 (the "<u>Final Hearing</u>").  Objections shall be in writing and shall be filed with the clerk of the Bankruptcy Court so that any such objections are received on or before the Objection Deadline.

3.      The Debtors and the Prepetition Agent have represented to the Bankruptcy Court that they have negotiated at arm's length and have acted in good faith in the negotiation and preparation of this Interim Order, have been represented by counsel, and intend to be and are bound by their respective terms.  The terms and conditions of this Interim Order reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

<u>STATEMENT OF JURISDICTION</u>

4.      This Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (G), (K), (M) and (O).

## NOTICE

5.      Sufficient and adequate notice of the Financing Motion and the Interim Hearing has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules 2002, 4001, 6004, 9006, and 9014 and the Bankruptcy Local Rules, and as required by sections 102, 105, 361, 362, and 363 of the Bankruptcy Code.  Other than the notice provided for herein, no further notice of the interim relief sought in the Financing Motion is necessary.

## FACTUAL AND PROCEDURAL BACKGROUND

6.      On November 18, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and possession of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      On November 19, 2019, the Bankruptcy Court conducted the Interim Hearing and pronounced interim approval of the Financing Motion as set forth herein.

8.      An official committee of unsecured creditors has not been appointed in these chapter 11 cases (the "Cases").

## PREPETITION REVOLVING CREDIT AGREEMENT

### The Prepetition Claim

9.      Subject to the limitations of paragraph 65 of this Interim Order, the Debtors admit, stipulate, and agree that:

(a)      As of the Petition Date, pursuant to the Prepetition Claim Documents (as defined below) and applicable law, the Prepetition Secured Parties hold valid, enforceable, secured, and allowable claims against the Borrower and each Guarantor, in an aggregate amount equal to: (a) unpaid principal in the amount of not less than $322,000,000.00, plus (b) undrawn letters of credit in the amount of not less than $275,000.00 (the "Prepetition Letters of Credit"),

plus (c) all obligations under any Swap Agreement (as defined in the Prepetition Credit Agreement) with a Secured Swap Provider (as defined in the Prepetition Credit Agreement), plus (d) obligations under any Bank Products (as defined in the Prepetition Credit Agreement) owing to any Bank Products Provider (as defined in the Prepetition Credit Agreement), in each case to the extent included in the definition of "Indebtedness" set forth in the Prepetition Credit Agreement, plus any and all other interest (accruing at the default rate), fees, costs, expenses, charges, and other claims, debts, or obligations of the Debtors to the Prepetition Secured Parties that have accrued as of the Petition Date under the Prepetition Claim Documents and applicable law, plus all post-Petition Date interest (accruing at the default rate), fees, costs, and charges allowed to the Prepetition Secured Parties on such claims pursuant to section 506(b) of the Bankruptcy Code (collectively, the "Prepetition Claim").

(b)      The Prepetition Claim constitutes a legal, valid, binding, enforceable, and non-avoidable obligation of and claim against each Debtor, and the Prepetition Claim, along with the first-priority liens upon and security interests in the Prepetition Collateral (as defined below), are not and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination (whether equitable or otherwise), recovery, challenge, or claim pursuant to the Bankruptcy Code or any other applicable law, and the Debtors, their estates, and any official committee appointed in these Cases, except as otherwise provided in this Interim Order, do not possess and shall not be entitled to assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, amount, and/or non-avoidability of the Prepetition Claim.

### The Prepetition Claim Documents

10.      Subject to the limitations of paragraph 65 of this Interim Order, the Debtors admit, stipulate, and agree that:

(a)     The Prepetition Claim is evidenced by certain documents executed and delivered to the Prepetition Secured Parties by the Debtors, including, without limitation, the Prepetition Credit Agreement.[5]

(b)     The Prepetition Credit Agreement, and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, Swap Agreements (as defined in the Prepetition Credit Agreement), and other instruments or documents executed in connection therewith or related thereto shall be referred to herein collectively as the "Prepetition Claim Documents."  True and correct copies of certain of the Prepetition Claim Documents are retained by the Prepetition Secured Parties and may be made available to interested parties upon request.

(c)     The Prepetition Claim Documents are genuine, valid, existing, legally enforceable, unavoidable, and admissible in the Cases for all purposes.

### The Prepetition Collateral

11.     Subject to the limitations of paragraph 65 of this Interim Order, Debtors admit, stipulate, and agree that:

(a)     The Prepetition Claim evidenced by the Prepetition Claim Documents is secured by perfected, first-priority liens and security interests in (collectively, the "Prepetition Liens") *inter alia*, certain real and personal property, wherever located, whether now owned or at any time hereafter acquired by, any of the Debtors or in which the Debtors now have or at any

---

[5] The "Prepetition Credit Agreement" means that certain *Amended and Restated Credit Agreement*, dated as of May 7, 2014 (as amended by that certain First Amendment to Amended and Restated Credit Agreement dated as of November 4, 2014, that certain Second Amendment to Amended and Restated Credit Agreement dated as of December 30, 2014, that certain Third Amendment to Amended and Restated Credit Agreement dated as of May 3, 2016 and that certain Fourth Amendment to Amended and Restated Credit Agreement dated as of December 21, 2017, and any other supplements, amendments, amendments and restatements or other modifications prior to the date hereof), among the Borrower and the Prepetition Secured Parties.

time in the future may acquire any right, title, or interest and whether now existing or hereafter coming into existence covered by those certain mortgages, collateral, security and pledge agreements forming a component of the Prepetition Claim Documents, including, without limitation of the Debtors as covered by those certain mortgages, collateral and pledge agreements forming a component of the Security Instruments (as defined in the Prepetition Claim Documents), including, without limitation, the following presently owned and after-acquired real and personal property: (1) to the extent not constituting Excluded Property,[6] (a) Pledged Collateral, (b) Accounts, (c) Chattel Paper (both tangible and electronic), (d) Copyrights, Patents, and Trademarks, (e) Documents, (f) Equipment, (g) Fixtures, (h) General Intangibles, (i) Goods, (j) Instruments, (k) Inventory, (l) Investment Property, (m) cash or cash equivalents, (n) letters of credit, Letter-of-Credit Rights, and Supporting Obligations, (o) Deposit Accounts with any bank or other financial institution, (p) certain Commercial Tort Claims, (q) Securities, (r) Securities Accounts, (s) Commodity Accounts, (t) Assigned Contracts, and (u) additions to, substitutions for, and replacements, Proceeds (including Stock Rights), insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing; (2) (a) Pledged Collateral,[7] (b) rights, title, and interest in Swap Agreements, and (c) additions to, substitutions for and replacements, Proceeds, insurance proceeds and products of the foregoing, together with all books and records, and other records related thereto and any General Intangibles at any time evidencing

---

[6]  Capitalized terms used but not otherwise defined in this clause (1) shall have the meaning ascribed to such terms in that certain *Security Agreement* dated as of May 9, 2016 among the Debtors and the Prepetition Agent (as amended from time to time).

[7]  Capitalized terms used but not otherwise defined in this clause (2) shall have the meaning ascribed to such terms in that certain *Amended and Restated Guaranty and Pledge Agreement* dated as of May 7, 2014 among the Debtors and the Prepetition Agent (as amended from time to time).

or relating to any of the foregoing; (3) (a) the Oil and Gas Properties identified in the Mortgages, [8] (b) all rights, titles, interests and estates now owned or hereafter acquired by the Debtors in and to all geological, geophysical, engineering, accounting, title, legal and other technical or business data concerning the Oil and Gas Properties, the Hydrocarbons or any other item of property which are in the possession of the Debtors, and all books, files, records, magnetic media, computer records and other forms of recording or obtaining access to such data, (c) Hydrocarbons, (d) Accounts and Contract Rights, (e) As-Extracted Collateral from or attributable to the Oil and Gas Properties, (f) all books and records pertaining to the Oil and Gas Properties, (g) Fixtures, (h) to the extent not otherwise included, all Personal Property, and (i) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security, guarantees and other Supporting Obligations given with respect to any of the foregoing; (4) certain real property owned or leased by the Debtors, and (5) to the extent not otherwise included, all accessions to, additions to, substitutions for, and replacements, insurance proceeds, products, and proceeds of any of the foregoing (1) through (5), together with all books and records, and other records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing (collectively, and for the avoidance of doubt, together with the Cash Collateral (as defined below) the "Prepetition Collateral"); *provided, however*, that notwithstanding anything to the contrary herein, the Prepetition Collateral does not include (a) any of the Debtors' or the estates' claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the

---

[8]  Capitalized terms used but not otherwise defined in this clause (3) shall have the meaning ascribed to such terms in that certain *Amended and Restated Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement* dated as of May 7, 2014 by Approach Resources I, LP, a Texas limited partnership, in favor of the Prepetition Agent (as amended from time to time), or in that certain *Amended and Restated Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement* dated as of May 7, 2014 by Approach Oil & Gas Inc., a Delaware corporation, in favor of the Prepetition Agent (as amended from time to time), as applicable (collectively, the "Mortgages").

Bankruptcy Code or any other similar state or federal law (such actions, collectively, the "Avoidance Actions") or (b) the proceeds and property recovered in respect thereof (such proceeds and property, the "Avoidance Actions Proceeds").

(b)     The Prepetition Secured Parties' liens on and security interests in the Prepetition Collateral were granted pursuant to, *inter alia*, the Prepetition Credit Documents.

(c)     The Prepetition Secured Parties properly perfected their first-priority liens and security interests and other liens in the Prepetition Collateral as evidenced by, among other things, the Prepetition Claim Documents, documents held in possession of the Prepetition Secured Parties, and documents filed with the appropriate state, county, and other offices.

(d)     The Debtors are in default of their debts and obligations to the Prepetition Secured Parties under the terms and provisions of the Prepetition Claim Documents.  These defaults exist, have not been timely cured, and are continuing.  The filing of these Cases has accelerated, to the extent not previously accelerated, the maturity of the Prepetition Claim for all purposes in these Cases and in connection with the Prepetition Secured Parties' enforcement of their respective rights and remedies under the Prepetition Claim Documents and applicable law. Each of the Debtors is indebted and liable under the terms and provisions of the Prepetition Claim Documents without defense, counterclaim, or offset of any kind, and the Prepetition Claim remains fully due and owing.  No payments or other transfers made by or on behalf of the Debtors to the Prepetition Secured Parties prior to the Petition Date are avoidable or recoverable from any of the Prepetition Secured Parties under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise.  From and after the Petition Date, except as set forth in this Interim Order and in the DIP Credit Agreement, neither the Prepetition Agent nor the Prepetition Lenders shall have any obligation to lend or advance funds to the Debtors or their estates.

## CASH COLLATERAL

### Lenders' Cash Collateral

12.     All cash of each of the Debtors' bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, that were on the Petition Date in any of the Debtors' possession, custody or control (or persons in privity with any of the Debtors), or in which any of the Debtors will obtain an interest during the pendency of these Cases, or which represent income, proceeds, products, rents, or profits of any of the Prepetition Collateral shall constitute the cash collateral of the Prepetition Agent (collectively, the "Cash Collateral"). The Prepetition Agent has first-priority, perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Prepetition Claim Documents, sections 363(a) and 552(b) of the Bankruptcy Code, and this Interim Order.

13.     Each Debtor shall segregate and account to the Prepetition Agent for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession of others (if any), that is being held by those in privity with the Debtors, or that any Debtor might hereafter obtain or have any interest in. Each Debtor shall account to the Prepetition Agent for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Interim Order. Absent a further order of this Bankruptcy Court or the consent of the Prepetition Agent, the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided for herein.

### Need For and Consent to Limited Use of Cash Collateral

14.     The Prepetition Agent and the Prepetition Lenders do not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in this Interim Order. The relief hereunder is necessary to avoid immediate and irreparable harm to the Debtors'

estates because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, provide financial information, and pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtors' estates. The Debtors require the use of Cash Collateral as provided herein.

15.      Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtors and their estates. The ability of the Debtors to maximize the value of their estates depends upon the Debtors' ability to use the Cash Collateral of the Prepetition Lenders. Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving their estates.

<div align="center">

**Authorization for Limited Use of Cash Collateral**

</div>

16.      The Debtors are hereby authorized, on a limited basis, to use Cash Collateral of the Prepetition Lenders only in accordance with the terms and conditions provided in this Interim Order and the Budget (as defined below). Except on the terms and conditions of this Interim Order, the Debtors are prohibited from using Cash Collateral at any time absent written consent of the Agent or further order of the Bankruptcy Court. The Prepetition Secured Parties are granted Adequate Protection Liens (as defined below), Adequate Protection Claims (as defined below), Lenders' Costs (as defined below), and all other forms of adequate protection set forth herein (collectively, the "Adequate Protection"). The Debtors' right to use Cash Collateral may be extended only upon the Prepetition Agent's written consent or further order of this Court.

<div align="center">

**Cash Collateral Accounts**

</div>

17.      The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in each of the Debtors' accounts, possession, custody or control and which any

of the Debtors may receive in the future, in accordance with the applicable cash management orders entered by this Bankruptcy Court.

18.     To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be subject to the Adequate Protection Liens granted to the Prepetition Lenders hereunder.

## ADEQUATE PROTECTION OF THE PREPETITION LENDERS

### Budgeted Cash Collateral Usage

19.     As adequate protection of the Prepetition Lenders' interest in the Prepetition Collateral and for the Debtors' use of the Cash Collateral and only so long as an Event of Default (as defined below) shall not have occurred and continue to exist after the Default Notice Period (as defined below), the Debtors are authorized to use Cash Collateral in accordance with the 13-week cash flow budget attached hereto as **Exhibit 1** (as amended, supplemented, replaced, or otherwise modified from time to time in accordance with the terms hereof and the DIP Documents and acceptable to the Prepetition Agent, the "Budget") as the same may be extended in accordance herewith, in an amount not to exceed those amounts set forth in the Budget; *provided, however*, that, (i) the actual aggregate disbursements of the Debtors for any one-week period of the Budget shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than ten percent (10%), (ii) the actual aggregate disbursements of the Debtors for any line item for any one-week period of the Budget shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%), and (iii) the aggregate actual production of the Debtors of crude oil, natural gas and natural gas liquids from their Oil and Gas Properties (as defined in the Prepetition Credit Agreement) for each prior month, as reported within 40 days following the end of such month, shall not be less than the amount therefor set forth in the Budget by more than ten percent (10%) (any variance not

exceeding such maximums in subparagraph (i) and (ii) of this sentence, or less than such minimum in subparagraph (iii) of this sentence, a "Permitted Variance").   Any transfer or use of Cash Collateral by the Debtors shall be conditioned upon the Debtors' compliance with the Budget. Prior to any transfer or use of Cash Collateral by the Debtors, the Debtors' Executive Vice President – Finance and Accounting shall review and verify the proposed transfer or use of Cash Collateral for strict compliance with the Budget, and shall provide to the Prepetition Agent such documentation as the Prepetition Agent shall reasonably require to evidence the Debtors' compliance with the Budget and the absence of Cash Collateral.

20.     By not later than 5:00 p.m. (Central Time) on the first Wednesday following the entry of this Interim Order, and on each Wednesday thereafter by such time (or, if such Wednesday is not a business day, then the immediately succeeding business day), the Debtors shall deliver to the Prepetition Agent a line-by-line reconciliation report showing the variances comparing actual cash receipts and disbursements of the Debtors during the immediately-preceding calendar week with corresponding forecasted amounts for such week in the Budget, including written descriptions in reasonable detail explaining any material positive or negative variances; *provided*, *however*, the Debtors shall report the actual production of crude oil, natural gas and natural gas liquids from their Oil and Gas Properties on a monthly basis within 40 days following the end of each applicable month.

21.     By not later than 5:00 p.m. (Central Time) on every Wednesday following the entry of this Interim Order (or, if such Wednesday is not a business day, then the immediately succeeding business day), the Debtors shall deliver to the Prepetition Agent an updated Budget for reasonable approval (such approval not to be unreasonably withheld, conditioned or delayed) by the

Prepetition Agent.  An approved Budget may be modified in writing only with the prior written consent of the Prepetition Agent.

22.      Upon the occurrence of an Event of Default that continues to exist after the Default Notice Period (as defined below), the Prepetition Lenders' consent to use of Cash Collateral or agreement to extend credit shall automatically and immediately terminate and any consent for use of Cash Collateral or agreement to extend credit to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn unless such Event of Default is waived by the Prepetition Agent in its sole and absolute discretion.

**<u>Replacement and Adequate Protection Liens; Superpriority Administrative Claims</u>**

23.      Taking into account all factors in these Cases, the Prepetition Lenders are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e) to adequate protection of their respective interests in property of the Debtors' estates, and the Debtors shall be obligated to provide such adequate protection to the extent that the Automatic Stay or any use, sale or lease, or any grant of a lien results in decrease in the value of the Prepetition Lenders' interests in the Prepetition Collateral and the Cash Collateral from and after the Petition Date (such decrease in value, the "<u>Adequate Protection Obligations</u>").  In consideration for the Debtors' use of Cash Collateral and as adequate protection for, and to secure payment of the Adequate Protection Obligations, the Prepetition Agent is hereby granted, effective as of the Petition Date, valid, binding, continuing, enforceable, unavoidable, and automatically perfected, first-priority replacement liens and security interests in and upon (a) all Prepetition Collateral, and (b) all assets and properties of the Debtors' estates, whether now owned or hereafter acquired, including, without limitation, all personal and real property of the Debtors' estates and all products, proceeds, rents, and profits thereof, including all such property that, from and after the Petition Date, is not subject to any lien or security interest, if any (the "<u>Adequate Protection Liens</u>", and the Prepetition

Collateral subject to the Adequate Protection Liens, the "Adequate Protection Collateral");
*provided, however*, that notwithstanding anything to the contrary herein, the Adequate Protection
Collateral does not include Avoidance Actions and Avoidance Action Proceeds.

24.     To the extent any adequate protection is insufficient to adequately protect the
Prepetition Agent's and the Prepetition Lenders' interest in the Prepetition Collateral and the
Adequate Protection Collateral, the Prepetition Agent and the Prepetition Lenders are hereby
granted superpriority administrative claims and all of the other benefits and protections allowable
under section 507(b) of the Bankruptcy Code that shall secure the Adequate Protection Obligations
(the "Adequate Protection Claims").   The Adequate Protection shall be subject to and subordinate
to payment of the Carve Out (as defined below).

## Automatic Perfection

25.     This Interim Order shall be sufficient and conclusive evidence of the priority,
perfection, attachment, and validity of all of the Prepetition Agent's and the Prepetition Lenders'
security interests in and liens on the Prepetition Collateral and the Adequate Protection Collateral
granted and created hereunder, and such security interests and liens shall constitute valid,
automatically perfected and unavoidable security interests and liens, with the priorities granted
hereunder, effective as of the Petition Date, without the necessity of executing deposit account
control agreements or creating, filing, recording, or serving any financing statements, mortgages,
or other documents, that might otherwise be required under federal or state law in any jurisdiction
or the taking of any other action to validate or perfect the security interests and liens granted to the
Prepetition Agent by this Interim Order.

26.     To the extent that any applicable non-bankruptcy law otherwise would restrict the
granting, scope, enforceability, attachment, or perfection of the Prepetition Agent's and the
Prepetition Lenders' liens and security interests granted and created by this Interim Order or

otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the Bankruptcy Court.

27.     By virtue of the terms of this Interim Order, to the extent that the Prepetition Agent has entered into deposit account control agreements with the Debtors or filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such execution and filings, as applicable, shall be deemed to properly perfect its liens and security interests granted under this Interim Order without further action by the Prepetition Agent or by any of the Prepetition Lenders.

28.     If the Prepetition Agent shall, in its sole and absolute discretion, elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents, or enter into any deposit account control agreements, to further evidence perfection of its interests in property of the estates, the Prepetition Agent, or, upon the request of the Prepetition Agent, the Debtors, are authorized and directed to execute, or cause to be executed, all such mortgages, deeds of trust, other documents, or deposit account control agreements, and the filing, recording, or service (as the case may be) of such financing statements, mortgages, deeds of trust, or similar documents, or the execution of any deposit account control agreements, shall be deemed to have been made at the time of and on the Petition Date, and the signature(s) of any person(s) designated by the Debtors, whether by letter to the Prepetition Agent or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the Prepetition Agent granted hereunder shall bind the Debtors and their estates.  The Prepetition Agent may, in its sole and absolute discretion, execute such documents on behalf of the Debtors as the Debtors' attorney-in-fact, or file a certified copy of this Interim Order in any filing or

recording office in any county or other jurisdiction in which any of the Debtors have real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Interim Order.

## Authorization to Act

29.     The Debtors are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the Prepetition Agent may reasonably require as evidence of and for the protection of the Prepetition Collateral or the Adequate Protection Collateral, or that may be otherwise deemed necessary by the Prepetition Agent to effectuate the terms and conditions of this Interim Order.

30.     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Interim Order, as applicable, and without further order of the Bankruptcy Court: (a) the Debtors shall use all Cash Collateral strictly in accordance with the terms of the Budget requirements and the other terms of this Interim Order; and (b) the Debtors shall not, without prior order from the Bankruptcy Court, engage in any transaction that is not in the ordinary course of the Debtors' business.

## No Subordination of Liens

31.     The Adequate Protection Liens granted to the Prepetition Secured Parties pursuant to this Interim Order shall not at any time be (a) made subject or subordinated to, or made *pari passu* with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under sections 363 or 364(d) of the Bankruptcy Code or otherwise (other than, as applicable, the DIP Superpriority Claim and the DIP Liens granted in favor of the DIP Secured Parties upon entry of the Final Order), or (b) subject to any lien or security interest that is

avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

## No Additional Liens

32.     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Interim Order, as applicable, the Debtors shall not be authorized to obtain credit secured by a lien or security interest in the Collateral (other than the DIP Credit Facility) without the prior written consent of the Agent or order of the Bankruptcy Court upon reasonable notice.

## No Liability

33.     No act committed or action taken by the Prepetition Agent under this Interim Order, the Prepetition Claim Documents, or otherwise, shall be used, construed, or deemed to hold the Prepetition Agent or the Prepetition Lenders to be in "control" of or participating in the governance, management, or operations of any of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of any of the Debtors or their respective businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Prepetition Agent or the Prepetition Lenders under the Prepetition Claim Documents or this Interim Order, including, without limitation, such rights and remedies as may be exercisable by the Prepetition Agent or the Prepetition Lenders in connection with this Interim Order.

**Automatic Stay**

34.     The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors, the Prepetition Agent, and the Prepetition Lenders to commit all acts and take all actions necessary to implement the this Interim Order, (b) all acts, actions, and transfers contemplated herein, and (c) counterparties to any hedge contracts with the Debtors that are also party to the Prepetition Credit Agreement to terminate any such hedge contract with the Debtors and to apply or offset, as the case may be, any proceeds thereof against the Prepetition Claim.

**Collateral Insurance, Maintenance, Taxes, and Deposits**

35.     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Prepetition Collateral, and in accordance with the Prepetition Claim Documents (covering such risks in amounts as shall be satisfactory to the Prepetition Agent and shall name the Prepetition Agent as loss payee or additional insured, as applicable, thereunder), including, without limitation, insurance covering the Prepetition Collateral and such other collateral of the Prepetition Lenders, if any, as the Prepetition Agent may from time to time request; and, at the Prepetition Agent's request, the Debtors shall deliver to the Prepetition Agent evidence of the maintenance of such insurance.

36.     Upon receipt of notification (written or oral) that an insurance policy covering any Prepetition Collateral will not be renewed by the respective carrier, the Debtors shall promptly notify the Prepetition Agent in writing of such occurrence and thereafter provide the Prepetition Agent with the status of all negotiations, if any, regarding such policy on a weekly basis.

37.     To the extent permitted by the Budget, the Debtors shall make any and all payments necessary to keep the Prepetition Collateral and their other property in good repair and condition and not permit or commit any waste thereof.  The Debtors shall exercise their business judgment

and, in so doing shall preserve, maintain, and continue all material leases, patents, licenses, privileges, franchises, certificates and the like necessary for the operation of their businesses.

38.     To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits which are not included in the Budget without first obtaining prior written consent of the Prepetition Agent), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to the Adequate Protection Liens, and the Debtors' use of Cash Collateral granted by this Interim Order.

### Reporting Requirements

39.     The Debtors are authorized and directed to provide to the Prepetition Agent all of the documentation and reports required under the Prepetition Claim Documents, including, without limitation, the reports required by the Prepetition Credit Agreement, schedules, assignments, financial statements, insurance policies, and endorsements, unless the Prepetition Agent waives or modifies such requirements in writing (the "Reporting Information").

40.     The Reporting Information shall also include: (a) weekly reports of receipts and budgeted cash usage; (b) variance reports; (c) copies of all reports submitted or filed with the Office of the United States Trustee (the "U.S. Trustee") within two (2) days after such submission or filing; and (d) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates, as the Prepetition Agent may from time to time reasonably request.  All Reporting Information shall be in accordance with accounting principles and bookkeeping practices consistently applied with past accounting principles and bookkeeping practices and reporting of the Debtors to the Prepetition Agent.

41.     The Prepetition Agent, and its representatives, agents, consultants and other professionals, shall be permitted, in coordination with Debtors' counsel, to contact and communicate with the Debtors and their financial and restructuring advisors regarding potential transactions for the Debtors' reorganization and the sale or other disposition of material assets of any of the Debtors' estates.  The Debtors shall be responsive and employ their commercially reasonable efforts to cooperate in the coordination of all such contacts and communications, including, without limitation, by conducting update telephone conferences with the Debtors, their financial and restructuring advisors, and the Prepetition Secured Parties upon reasonable request regarding any potential restructuring transactions or transactions for the sale or other disposition of the assets of any of the Debtors' estates.

42.     The Prepetition Agent, and its representatives, agents and advisors, shall have reasonable access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Prepetition Collateral to enable the Prepetition Agent or its representatives, agents and advisors to (a) review, appraise, and evaluate the physical condition of the Prepetition Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors.  The Debtors shall fully cooperate with the Prepetition Agent regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the Prepetition Agent and its representatives, agents and advisors, to conduct such reviews, evaluations, and inspections.

43.     Subject to any confidentiality requirements, the Debtors shall promptly deliver to the Prepetition Agent any and all material documentation that constitutes a written, bona fide solicitation, offer, or proposed sale or disposition of a material amount of property of any of the

Debtors' estates actually received by a Responsible Officer (as defined in the Prepetition Credit Agreement) of a Debtor or its counsel or financial advisor, including, without limitation, letters of inquiry, solicitations, letters of intent, or asset purchase agreements.

<div align="center">**Fees, Costs and Expenses of the Prepetition Secured Parties**</div>

44.     During the Cases, as additional adequate protection, all fees, costs, and expenses, including, without limitation, attorneys' fees and expenses and financial advisors' fees and expenses, due at any time to the Prepetition Lenders under the Prepetition Claim Documents that are incurred as a result of or in way related to these Cases, or incurred prior to and remain unpaid on the Petition Date (collectively, the "Lenders' Costs"), may be charged by the Prepetition Lenders and shall be paid by the Debtors out of the Cash Collateral, up to the aggregate amount for such Lenders' Costs set forth in the Budget or, if greater than such amount in the Budget, only if approved in writing by the Prepetition Agent.  The Debtors are hereby authorized to pay such Lenders' Costs without the Prepetition Agent or the Prepetition Lenders, or the Prepetition Agent's or the Prepetition Lenders' counsel, having to file any further application with the Bankruptcy Court for approval, allowance, or payment.  Any such Lenders' Costs that constitute fees and expenses incurred by any professional retained by the Prepetition Agent shall be paid within ten (10) calendar days of delivery of a summary invoice to the Debtors, the U.S. Trustee, and any official committee appointed in these Cases, which may be redacted for privilege as determined by the Agent; *provided, however*, that (a) any redacted fee statements shall retain all privileges irrespective of any disclosure of any privileged matter, and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in these Cases or otherwise, (b) if the Debtors, U.S. Trustee, or any official committee objects to the reasonableness of such fees and expenses, the Debtors, U.S. Trustee, or any official committee, as the case may be, shall file and serve upon such professional an objection with the Bankruptcy Court (a "Fee Objection") limited

to the issue of the reasonableness of the disputed fees and expenses within ten (10) calendar days of the delivery of such invoice; (c) if the Debtors, U.S. Trustee, or any official committee fails to object to the reasonableness of such fees and expenses within ten (10) calendar days, any objection of the Debtors, U.S. Trustee, or any official committee, as the case may be, shall be waived, (d) the Debtors shall timely pay in accordance with this Interim Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed, and (e) notwithstanding the foregoing (a), (b), (c), and (d) of this sentence, the Lenders' Costs incurred prior to and unpaid as of the Petition Date shall be paid indefeasibly upon entry of this Interim Order.  Subject to any Fee Objection, all Lenders' Costs owed to the Prepetition Agent and/or the Prepetition Lenders, regardless of whether or not such Lenders' Costs are set forth in the Budget and including, without limitation, all fees referred to in the Prepetition Claim Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute obligations that are part of the Prepetition Claim, as applicable, and shall be secured by the Prepetition Collateral and afforded all priorities and protections afforded to the Prepetition Agent and the Prepetition Lenders under this Interim Order and the Prepetition Claim Documents.

**Milestones**

45.    It is a condition to the Debtors' use of Cash Collateral and shall be an Event of Default unless the Debtors shall (a) file a chapter 11 plan of reorganization reasonably acceptable to the Prepetition Agent, and (b) pursue a sale of substantially all of the Debtors' assets (a "Sale Transaction") on terms reasonably acceptable to the Prepetition Agent as part of such chapter 11 plan of reorganization and separately and simultaneously by motion in accordance with the

applicable Milestones (as defined below) set forth below, and (c) accomplish each of the following requirements by the applicable date set forth below ("Milestones"):

(a)    On the Petition Date, the Debtors shall have filed a motion seeking approval of the Final Order, in form and substance reasonably acceptable to the Prepetition Agent.

(b)    Not later than the date that is thirty (30) days following the Petition Date, the Debtors shall have obtained entry of the Final Order and the Final Order shall be in full force and effect and shall not have been (i) vacated, reversed, or stayed, or (ii) amended or modified except as otherwise agreed to in writing by the Prepetition Agent in its reasonable discretion.

(c)    On or before fifteen (15) calendar days after the Bid Deadline (as defined below), the Debtors shall have filed with the Bankruptcy Court a chapter 11 plan (the "Plan") and corresponding disclosure statement (the "Disclosure Statement"), and a motion seeking approval of the Disclosure Statement, in each case, in form and substance reasonably acceptable to the Prepetition Agent.

(d)    On or before forty-five (45) calendar days after the Bid Deadline, the Debtors shall have obtained entry by the Bankruptcy Court of an order approving the Disclosure Statement in form and substance reasonably acceptable to the Prepetition Agent.

(e)    On or before ninety (90) days after the Bid Deadline, the Debtors shall have obtained entry by the Bankruptcy Court of an order confirming the Plan (the "Confirmation Order"), in form and substance reasonably acceptable to the Prepetition Agent.

(f)    On or before thirty (30) days after entry of the Confirmation Order, the effective date of the Plan shall have occurred, as well as the discharge of the DIP Obligations, by indefeasible payment in full in cash to the DIP Secured Parties or such other treatment as may be agreed to by the Majority Lenders (as defined in the Prepetition Credit Agreement) and the Debtors.

(g)    On or before twenty (20) days after the Petition Date, the Debtors shall have filed a motion with the Bankruptcy Court, in form and substance reasonably acceptable to the Prepetition Agent, seeking approval of the Sale Transaction, bid procedures, required minimum bid levels, credit bid rights, and Plan toggle rights, in each case as determined by the Prepetition Agent in its reasonable discretion (the "Bid Procedures") and related relief in connection with the Sale Transaction (the "Bid Procedures and Sale Motion").

(h)    On or before fifty (50) days after the Petition Date, the Debtors shall have obtained entry by the Bankruptcy Court of an order (the "Bid Procedures Order"), in form and substance reasonably acceptable to the Prepetition Agent, approving the Bid Procedures and setting a date for the hearing to approve the Sale Transaction.

(i)    On or before ninety (90) days after the Petition Date, the Debtors shall have

received qualified bids for the Sale Transaction (the "Bid Deadline").

(j)     On or before five (5) days after the Bid Deadline, the Debtors shall have commenced the auction contemplated by the Bid Procedures.

(k)     On or before ten (10) days after the Bid Deadline, the Debtors shall have obtained entry by the Bankruptcy Court of an order, in form and substance reasonably acceptable to the Prepetition Agent, approving the Sale Transaction (the "Sale Order").

(l)     Unless the Plan is being pursued in accordance with the foregoing clauses (b)-(e) above, on or before twenty (20) days after entry of the Sale Order, the Debtors shall indefeasibly pay the DIP Obligations in full in cash or such other treatment as may be agreed to by the Majority Lenders (as defined in the Prepetition Credit Agreement) and the Debtors.

46.     The Debtors covenant and agree that they will use their best efforts to comply with each of the Milestones.  Each of the Milestones may be extended or waived in writing by the Prepetition Agent in its sole and absolute discretion.  The Debtors shall promptly file with the Bankruptcy Court a notice of any such extension or waiver.  With respect to any Milestone or Event of Default set forth in this Interim Order that is subject to the Prepetition Agent's reasonable approval, reasonable consent, reasonable acceptance, reasonable discretion, or reasonable determination, in the event that the Debtors and the Prepetition Agent do not agree regarding the Prepetition Agent's reasonableness as to such Milestone or Event of Default, the Debtors or the Prepetition Agent may request an emergency telephonic hearing for the Bankruptcy Court to adjudicate such dispute.

**Carve Out**

47.     As used in this Interim Order, the term "Carve Out" means the sum of (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, (b) to the extent (i) provided for in the Budget and (ii) allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Bankruptcy Court, all unpaid fees and expenses (the "Allowed

Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), and any appointed committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined below); and (c) Allowed Professional Fees of Professional Persons in an aggregate amount, after application of all retainers, not to exceed $1,250,000 incurred on or after the first business day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (c) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice stating that the Post-Carve Out Trigger Notice Cap has been invoked, delivered by hard copy, facsimile, or email (or other electronic means) by the Prepetition Agent to the Debtors, their lead bankruptcy counsel, the U.S. Trustee, and counsel to any appointed committee, which notice may be delivered following the occurrence and continued existence of an Event of Default under the terms of this Interim Order.

48.    No Direct Obligation to Pay Allowed Professional Fees.  Neither the Prepetition Agent nor the Prepetition Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any subsequent cases under any chapter of the Bankruptcy Code or otherwise.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Agent or the Prepetition Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee or ensure that the Debtors have sufficient funds to pay such compensation or

reimbursement, and any such obligation to make payments to any Professional Person shall be an obligation of the Debtors' estates.

49.     Any payment or reimbursement made to any Professional Persons in respect of any Allowed Professional Fees prior to the delivery of the Carve Out Trigger Notice shall not reduce the Carve Out.

50.     Any payment or reimbursement to a Professional Person made in respect of any Allowed Professional Fees incurred on or after the delivery of the Carve Out Trigger Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis.

51.     Other than the Carve Out, neither the Prepetition Agent nor the Prepetition Lenders consent to any carve out from the Prepetition Collateral for the payment of any fees or expenses of any Professional Persons.  The amounts payable on account of Allowed Professional Fees are subject to final approval and allowance by the Bankruptcy Court, and the Prepetition Agent expressly retains the right to object to any fees or expenses of any Professional Persons as to reasonableness or on any other grounds.

52.     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Interim Order, as applicable, any remaining unapplied retainer funds at the conclusion of a Professional Person's engagement shall be immediately returned to the Prepetition Agent as Cash Collateral.  Nothing herein shall be construed to affect the rights of any party in interest to file an application for the allowance of fees and expenses, provided that all parties' rights to object to or otherwise contest the relief requested in any such application are reserved.

53.     Notwithstanding anything to the contrary in this Interim Order, neither the Carve Out, Cash Collateral, or any proceeds of the Prepetition Collateral shall be used to pay any Allowed Professional Fees (including, without limitation, expenses) in connection with any of the following (each a "Prohibited Purpose"): (a) objecting to, seeking subordination of, seeking to avoid, or contesting in any manner the validity, amount, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim or offset to, the Financing Motion or any of the relief requested therein, this Interim Order, Final Order, the DIP Credit Facility, the Prepetition Claim, the Adequate Protection Claim, or any other claim of the Prepetition Agent or the Prepetition Lenders, or the perfected status or priority of any of the Prepetition Liens, the Adequate Protection Liens, or any other liens of the Prepetition Agent or the Prepetition Lenders, or any other rights or interests of the Prepetition Agent or the Prepetition Lenders; (b) asserting, investigating, prosecuting, or joining in any claim, demand, or cause of action against the Prepetition Agent or any Prepetition Lender, including, without limitation, for lender liability, breach of contract, or tort, or pursuant to Section 105, 506, 510, 544, 547, 548, 549, 550, 552 or 553 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise; (c) seeking to modify, or modifying, any of the rights granted under this Interim Order to the Prepetition Agent or any Prepetition Lender or under the Prepetition Claim Documents; (d) after the occurrence and during the continuance of an Event of Default, objecting to, contesting, delaying, preventing, hindering, or interfering in any way with (i) the Prepetition Agent's or the Prepetition Lenders' enforcement of realization upon any of the Prepetition Collateral, or (ii) the exercise of any rights and remedies by the Prepetition Agent or the Prepetition Lenders with respect to any Prepetition Collateral (e) asserting or declaring any of the Prepetition Claim Documents or this Interim Order to be invalid, not binding, or unenforceable in any respect, (g) using Cash Collateral except as specifically permitted in this Interim Order and

the Budget, (h) selling any Prepetition Collateral outside the ordinary course of business except as specifically authorized by this Interim Order or by order of the Bankruptcy Court, (i) incurring any indebtedness except as permitted by this Interim Order, or (j) committing any other act or taking any other actions that are materially adverse to the Prepetition Agent or the Prepetition Lenders. Notwithstanding the foregoing, Cash Collateral may be used to pay the fees earned and expenses incurred of counsel to any official committee appointed in the Cases in an amount not to exceed $75,000 to review the Prepetition Claim, the Prepetition Claim Documents, and any lien or security interest granted thereby, and to investigate the foregoing matters described in clause (a) through (e) of this paragraph and assert any challenges to one or more of the Debtors' stipulations or the releases set forth herein.

### Proofs of Claim

54.     None of the Prepetition Agent or any of the Prepetition Lenders shall be required to file proofs of claim in any of the Cases or in any subsequent cases of the Debtors under any chapter of the Bankruptcy Code in order to assert a claim for the Prepetition Claim arising under the Prepetition Claim Documents.  Any order entered by the Bankruptcy Court in relation to the establishment of a bar date for any claim in any of the Cases or any subsequent cases shall not apply to the Prepetition Agent or the Prepetition Lenders with respect to the Prepetition Claim arising under the Prepetition Claim Documents.  Notwithstanding the foregoing, the Prepetition Agent is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a single, master proof of claim (a "Master Proof of Claim") for any claims of the Prepetition Agent or the Prepetition Lenders arising from the Prepetition Claim Documents.  Upon the filing of a Master Proof of Claim by the Prepetition Agent, each of the Prepetition Lenders and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims

against each of the Debtors of any type or nature whatsoever, and the claim of the Prepetition

Agent and each Prepetition Lender (and each of its respective successors and assigns) named in a

Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each

of the Cases; provided, however, that nothing herein shall waive the right of any Prepetition Lender

to file its own proof(s) of claim against the Debtors.

### Events of Default

55.    The Debtor's authority to use Cash Collateral under this Interim Order shall

immediately and automatically terminate upon the occurrence of any of the following events (each

an "Event of Default"):

<div style="margin-left:2em">

(a)    any default, violation, or breach of any of the Debtors, or the Debtors' failure to comply with, any of the terms of this Interim Order;

(b)    the occurrence of the Expiration Date (as defined below) or the maturity, termination, expiration, or non-renewal of this Interim Order as provided for herein;

(c)    the Debtors shall fail to obtain, on or before thirty (30) days after the Petition Date, entry of the Final Order in form and substance acceptable to the Prepetition Agent;

(d)    an ERISA Event (as defined in the Prepetition Credit Agreement) shall have occurred that, when taken together with all other ERISA Events that have occurred, would reasonably be expected to result in liability of the Debtors in an aggregate amount exceeding $5,000,000;

(e)    the dismissal or conversion to chapter 7 of the Bankruptcy Code of any of the Cases, or the Debtors shall file a motion or other pleading or support a motion or other pleading filed by any other person seeking the dismissal or conversion of any of the Cases without the consent of the Prepetition Agent;

(f)    the appointment of a trustee or examiner with expanded powers (beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) under Bankruptcy Code section 1106(b) in the Cases, or the Debtors shall file a motion or other pleading or support a motion or other pleading filed by any other person seeking appointment of such a trustee or examiner in any of the Cases without the consent of the Prepetition Agent;

</div>

(g)     the grant of any security interest, lien, or encumbrance in any of the Prepetition Collateral or Adequate Protection Collateral which is *pari passu* with or senior to the liens, security interests, or claims of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens), including, without limitation, any surcharge of or the imposition or assessment of any costs against of the Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code section 506(c) or 552(b) or otherwise, unless the Prepetition Agent agrees in writing that such security interest, lien, or encumbrance does not constitute an Event of Default;

(h)     without the consent of the Prepetition Agent, the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than the Prepetition Secured Parties) in any Prepetition Collateral or the Adequate Protection Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Prepetition Collateral or the Cash Collateral, in each case involving assets with a value in excess of $100,000;

(i)     any attempt by any Debtor to vacate or modify this Interim Order over the objection of the Prepetition Agent;

(j)     the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Interim Order without the consent of Prepetition Agent;

(k)     the Debtors commence any challenge to the extent, validity, priority, amount, or unavoidability of the Prepetition Secured Parties' liens securing the Prepetition Claim or the Adequate Protection Claim, or the entry of an order sustaining any such challenge commenced by any party other than the Debtors;

(l)     the Debtors fail to timely pay any amount required to be paid to the Prepetition Agent by this Interim Order or the Budget;

(m)     the allowance of any priority claims (other than the Carve Out) in the Cases that are senior to or on parity with the Adequate Protection Claims or secured claims of the Prepetition Secured Parties against the Debtors and their estates arising from the Prepetition Claim Documents and this Interim Order;

(n)     except for the reasonable and necessary sale of inventory and supplies and the collection of accounts receivable in the ordinary course of the Debtors' businesses and as may be provided for in the Budget and consistent with the terms hereof, the sale, transfer, lease, or disposition of, or the imposition of any encumbrance on, any of the Pre-Petition Collateral or the Cash Collateral, without the prior written consent of the Pre-Petition Agent;

(o)     one or more judgments for the payment of money in an aggregate amount in excess of $500,000 (to the extent not covered by independent third party insurance provided by insurers satisfactory to Prepetition Agent as to which the insurer does not dispute coverage and is not subject to an insolvency proceeding, provided that a claim that is pending under review by such an insurer shall not be deemed "denied" for purposes of this clause), shall be rendered against the Debtors and the same shall remain undischarged for a period of thirty (30) consecutive days during which execution shall not be effectively stayed (including as a result of the pendency of the Cases);

(p)     the entry of an order by the Bankruptcy Court terminating or reducing the period during with the Debtors have the exclusive right to file a chapter 11 plan and solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code;

(q)     the Debtors shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the Prepetition Secured Parties, provided, however, that the Debtors may comply with discovery requests in connection with any such suit or other proceeding in accordance with applicable law;

(r)     the entry of an order by the Bankruptcy Court (or any other court of competent jurisdiction) approving any financing under section 364 of the Bankruptcy Code (other than under the DIP Credit Facility) or the Debtors shall file a motion or other pleading or shall support a motion or other pleading filed by any other person seeking any of the foregoing;

(s)     any Debtor contests the validity or enforceability of any provision of any Prepetition Claim Document or the validity, extent, perfection or priority of a lien granted in favor of the Prepetition Secured Parties or shall support or consent to any other person concerning the foregoing;

(t)     the filing by any Debtor of a chapter 11 plan without the reasonable consent of the Prepetition Agent;

(u)     the entry of an order of the Bankruptcy Court pursuant to Bankruptcy Code section 363 approving the sale of any Prepetition Collateral or Adequate Protection Collateral that does not provide for the payment in full of the Prepetition Claim upon the closing of the sale without the reasonable consent of the Prepetition Agent;

(v)     the entry of an order of the Bankruptcy Court pursuant to Bankruptcy Code section 363(k) limiting the ability of the Prepetition Secured Parties, either individually or together with one or more Prepetition Secured Party, to credit bid the full amount of their claims in the Cases in connection with any asset sale process or plan sponsorship process or any sale of assets (in

whole or part) by any Debtor, including without limitation sales occurring pursuant to Bankruptcy Code section 363 or included as part of any restructuring plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii);

(w)     the entry of an order of the Bankruptcy Court without the consent of the Prepetition Agent providing for a transfer in venue of any of the Cases; and

(x)     the failure of the Debtors to meet any of the Milestones.

## REMEDIES

56.     Without requiring further order from the Bankruptcy Court and without the need for filing any motion for relief from the Automatic Stay or any other pleading, upon the occurrence and during the continuance of any Event of Default and following the giving of not less than three (3) business days' prior written notice (the "Default Notice Period") by the Prepetition Agent via email to counsel to the Debtors, the U.S. Trustee, and counsel to any official committee appointed in these Cases, the Debtors' authority to use Cash Collateral shall immediately terminate; *provided, however*, that during the Default Notice Period, the Debtors and any official committee appointed in these Cases may seek an emergency hearing before the Bankruptcy Court, and must provide prompt notice of such hearing to the Prepetition Agent and its counsel, to contest whether an Event of Default has occurred.  Upon the occurrence and during the continuation of an Event of Default, the Prepetition Agent and the Prepetition Lenders, in accordance with the Prepetition Claim Documents, as applicable, are hereby authorized to file a motion on shortened notice of no less than five (5) business days seeking relief from the Automatic Stay (the "Stay Relief Motion") in order to permit the Prepetition Agent and the Prepetition Lenders to exercise any or all of their other rights and remedies set forth in this Interim Order and the Prepetition Claim Documents pursuant to and subject to the terms and provisions of this Interim Order and the Prepetition Claim Documents.  Notwithstanding the occurrence of an Event of Default, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties this Interim

Order shall survive.  Further, upon the occurrence and during the continuation of an Event of Default, the DIP Credit Agreement Signatures shall no longer be subject to being held in irrevocable escrow.

57.     Subject to section 363(k) of the Bankruptcy Code, the Prepetition Agent may, at the direction of the Majority Lenders (as defined in the Prepetition Credit Agreement), credit bid all or any portion of the Prepetition Agent's and the Prepetition Lenders' respective claims, including, without limitation, the Prepetition Claim and the Adequate Protection Claim, at any time, including during any auction or other sale process, on any individual asset, portion of the assets, or all assets constituting their respective Prepetition Collateral or Adequate Protection Collateral in conjunction with any sale of the Debtors' assets pursuant to any chapter 11 plan or sale transaction.

## OTHER TERMS

58.     Other than the Carve Out, no priority claims shall be allowed that are or will be prior to or on parity with the Adequate Protection Claim or other secured claims of the Prepetition Agent and the Prepetition Lenders against the Debtors and their estates arising from the Prepetition Claim Documents and this Interim Order.

59.     No obligations incurred or payments or other transfers made by or on behalf of the Debtors to the Prepetition Agent or the Prepetition Lenders after the Petition Date pursuant to this Interim Order shall be avoidable or recoverable from the Prepetition Agent or the Prepetition Lenders under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise.  Any postpetition transfer or other payment by or on behalf of the Debtors to the Prepetition Agent, or any postpetition application by the Prepetition Agent, pursuant to this Interim Order or otherwise, shall be subject to the priorities in payment as set forth in this Interim Order and the Prepetition Claim Documents, as applicable.

60.     The provisions of this Interim Order shall inure to the benefit of the Debtors, the Prepetition Agent, and the Prepetition Lenders, and they shall be binding upon (a) the Debtors and their successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as legal representative of the Debtors or with respect to property of the estates of the Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, any subsequent chapter 7 case, or after any dismissal of the Cases and (b) all creditors of any of the Debtors and other parties in interest.

61.     Except for the reasonable and necessary sale of inventory and supplies in the ordinary course of the Debtors' business and as may be provided for in the Budget and consistent with the terms of the Prepetition Claim Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any of the Prepetition Collateral or the Adequate Protection Collateral, without the prior written consent of the Prepetition Agent.  The proceeds from any sale of any of the Debtors' assets (other than inventory sold in the ordinary course of the Debtors' business) and any casualty or condemnation proceeds, shall be paid to the Prepetition Agent for application to the Prepetition Claim and/or the Adequate Protection Claim, as determined by the Prepetition Agent.

62.     The Prepetition Lenders' consent for the Debtors' use of Cash Collateral is given in reliance on this Interim Order, and so long as the Prepetition Claim, the Adequate Protection Claim, and all other claims of the Prepetition Agent and the Prepetition Lenders against the Debtors remain unpaid, there shall not at any time be entered in the Cases any other order that, except as consented to by the Prepetition Agent in writing, (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of the Prepetition Collateral or Adequate Protection Collateral unless the cash proceeds will indefeasibly pay the Prepetition Claim, the Adequate Protection

Claim, and all other claims of the Prepetition Agent and the Prepetition Lenders against the Debtors in full, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property in which the Prepetition Agent or the Prepetition Lenders hold or assert liens or security interests, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to the Prepetition Agent and the Prepetition Lenders herein.

63.     The terms hereunder and under the Prepetition Claim Documents, the Prepetition Liens, and the Adequate Protection Liens granted to the Prepetition Agent and the Prepetition Lenders under this Interim Order, and the rights of the Prepetition Agent and the Prepetition Lenders pursuant to this Interim Order with respect to the Prepetition Collateral and the Adequate Protection Collateral shall not be altered, modified, extended, impaired, or affected by any chapter 11 plan of the Debtors without the prior written approval of the Prepetition Agent.

64.     The terms and provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to chapter 7 or dismissing the Debtors' Cases, except for the Debtors' authority to use any Cash Collateral and any obligations.  The terms and provisions of this Interim Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Order and the Prepetition Claim Documents, shall continue after any dismissal of the Debtors' Cases in this or any subsequent case under the Bankruptcy Code of any of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Interim Order until such time as the Carve Out, the Prepetition Claim and the Adequate Protection Claim, and all other claims of the Prepetition Agent and the Prepetition Lenders against the Debtors shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this

Interim Order, and the Prepetition Secured Parties shall have no further obligation or financial accommodation to any of the Debtors.

65.     The Debtors' stipulations, admissions, releases, and waivers contained in paragraphs 9 through 11 and paragraph 73 of this Interim Order shall be binding upon the Debtors' estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, releases, and waivers contained in paragraphs 9 through 11 and paragraph 73 of this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committee appointed or formed in these Cases (a "Committee") and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) five (5) business days prior to the commencement of the hearing to confirm a chapter 11 plan in these Cases, and (y) seventy-five (75) calendar days after entry of this Interim Order, (ii) solely with respect to any Committee, sixty (60) calendar days after the appointment of any Committee if appointed within thirty (30) days after the Petition Date, and (iii) any such later date as has been agreed to, in writing by the Prepetition Agent (the time period established by the foregoing clauses (i) and (iii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Claim or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other

claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, the "Challenges") against any of the Prepetition Secured Parties or their representatives in connection with matters related to against any of the Prepetition Secured Parties or their Representatives in connection with matters related to the (i) Prepetition Claim Documents, (ii) the Prepetition Claim, (iii) the Prepetition Liens, or (iv) the Prepetition Collateral, and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred; *provided further*, *however*, that the Committee shall not be required to prove in connection with any motion for derivative standing that the Debtors have unreasonably declined to pursue such Challenges.  If no such Challenge is timely and properly filed during the Challenge Period or the Bankruptcy Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Committee (if any), (b) the obligations of the Debtors under the Prepetition Claim Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter 7 case(s), (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, and (d) the Prepetition Claim and the Prepetition Liens shall not be subject to any other or further claim or challenge by any Committee or any other party in interest acting or seeking to act on behalf of the Debtors'

estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Committee (if any), any non-statutory committees appointed or formed in these Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their representatives arising out of or relating to the Prepetition Claim Documents shall be deemed forever waived, released, and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order in paragraphs 9 through 11 and paragraph 73 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any person, including the Committee (if any), standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to (i) the Prepetition Claim Documents, (ii) the Prepetition Claim, or (iii) the Prepetition Liens.

66.    If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed without the prior written agreement of the Prepetition Agent, such modification, vacation, or stay shall not affect the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to any of the Prepetition

Claim Documents.  Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Prepetition Agent before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Agent shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein and pursuant to the Prepetition Claim Documents with respect to all such indebtedness, obligations, or liabilities.

67.    No approval, agreement, or consent requested of the Prepetition Agent by the Debtors pursuant to the terms of this Interim Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Prepetition Agent other than a writing acceptable to the Prepetition Agent that is signed by the Prepetition Agent and expressly shows such approval, agreement or consent, without limitation.  Nothing herein shall in any way affect the rights of the Prepetition Agent or the Prepetition Lenders as to any non-Debtor entity, without limitation.  Except as otherwise expressly set forth herein, any determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of the Prepetition Agent or the Prepetition Lenders hereunder or related hereto, shall be in the Prepetition Agent's and/or the Prepetition Lenders' sole and absolute discretion.  Any act committed or action taken by the Prepetition Agent hereunder shall be deemed to be made for itself and for and on behalf of the Prepetition Lenders, as applicable.  Any authority or other right, benefit, or interest granted to the Prepetition Agent hereunder is deemed to be granted to the Prepetition Agent for itself and for and on behalf of the Prepetition Lenders, as applicable.  Any postpetition transfer or other payment by or on behalf of the Debtors to the Prepetition Agent, or any postpetition application by the Agent, pursuant to this Interim Order or otherwise, shall be

deemed to be made to the Prepetition Agent, for itself and for and on behalf of the Prepetition Lenders.

68.     Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Prepetition Agent to obtain further adequate protection and other statutory protections for the use of the Prepetition Collateral and Cash Collateral, or to seek other relief in these Cases in accordance with any provision of the Bankruptcy Code or applicable law.

69.     Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the Prepetition Agent and the Prepetition Lenders afforded pursuant to the Bankruptcy Code.

70.     This Interim Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Bankruptcy Court, and may be relied upon by the Prepetition Agent, the Prepetition Lenders, and the Debtors without the necessity of entry into the docket sheet of these Cases.  To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

71.     The Bankruptcy Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

72.     All headings in this Interim Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

## **WAIVER OF CLAIMS**

73.     SUBJECT TO PARAGRAPH 65 HEREOF, EACH OF THE DEBTORS (IN THEIR OWN RIGHT, ON BEHALF OF THEIR ESTATES, REPRESENTATIVES,

DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS, IN EACH CASE TO THE EXTENT PERMITTED BY APPLICABLE LAW) (COLLECTIVELY, THE "RELEASING PARTIES"), HEREBY RELEASES, ACQUITS, FOREVER DISCHARGES AND COVENANTS NOT TO SUE THE PREPETITION AGENT, THE PREPETITION LENDERS, AND THE PREPETITION AGENT'S AND THE PREPETITION LENDERS' REPRESENTATIVES, AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES THROUGH THE DATE OF THIS INTERIM ORDER, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING, WITHOUT LIMITATION, BANKRUPTCY CODE CHAPTER 5 CAUSES OF ACTION, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED (COLLECTIVELY, THE "RELEASED CLAIMS").  THE DEBTORS, ON BEHALF OF THE RELEASING PARTIES, FURTHER COVENANT NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY

RELEASED CLAIM.  THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.  NOTWITHSTANDING THE RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES CONTAINED ABOVE IN THIS PARAGRAPH, SUCH RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES SHALL BE DEEMED ACKNOWLEDGED AND REAFFIRMED BY THE DEBTORS EACH TIME THERE IS A FINANCIAL ACCOMMODATION OR USE OF CASH COLLATERAL UNDER THIS INTERIM ORDER AND THE PREPETITION CLAIM DOCUMENTS.  THE RELEASES AND WAIVERS IN THIS PARAGRAPH SHALL SURVIVE THE OCCURRENCE OF AN EVENT OF DEFAULT UNDER THIS INTERIM ORDER.

## NOTICE

74.     The Debtors' proposed counsel shall serve this Interim Order on all of the following parties: (a) the U.S. Trustee; (b) the attorneys for the Prepetition Agent and the Prepetition Lenders; (c) all creditors known to the Debtors who have or may assert liens against any of the Debtors' assets; (d) the United States Internal Revenue Service; (e) the 30 largest unsecured creditors of the Debtors; and (f) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Bankruptcy Local Rules.  Any notice required hereunder to the Debtors or any official committee appointed in these Cases shall be deemed given when delivered by email, other electronic delivery, fax, or hard copy, to their respective counsel of record in these Cases.

## EXPIRATION DATE/MATURITY

75.     The Prepetition Agent's consent and Debtors' authority to use Cash Collateral this Interim Order, subject to the funding and Budget limitations above, shall be effective upon entry

of this Interim Order to and including, without limitation, the earlier of: (a) at the election of the Prepetition Agent, the continued existence of an Event of Default as set forth in paragraph 55 above, (b) entry of the Final Order, or (c) the effective date of any chapter 11 plan, at which time all of the Debtors' authority to use Cash Collateral and this Interim Order shall terminate, unless extended by written agreement of the parties hereto, a copy of which, with an updated Budget, shall be promptly filed with this Bankruptcy Court by the Debtors ((b) of this paragraph, the "Expiration Date").

   76.  This Interim Order is effective immediately.


Signed: November 20, 2019

               _____
                    Marvin Isgur
               United States Bankruptcy Judge

**EXHIBIT 1**

**BUDGET**

**Approach Resources Inc.**
DIP Budget

*($ in thousands)*

| Forecast Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 Wks Ended |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ended | 11/24/2019 | 12/1/2019 | 12/8/2019 | 12/15/2019 | 12/22/2019 | 12/29/2019 | 1/5/2020 | 1/12/2020 | 1/19/2020 | 1/26/2020 | 2/2/2020 | 2/9/2020 | 2/16/2020 | 2/16/2020 |
| **Total Receipts** | $ 4,288 | $ 1,838 | $ 30 | $ - | $ - | $ 5,860 | $ 30 | $ - | $ - | $ 6,018 | $ - | $ 30 | $ - | $ 18,094 |
| **Disbursements** | | | | | | | | | | | | | | |
| Payroll & Benefits | (165) | (245) | (165) | (1,620) | (165) | (245) | (165) | (245) | (165) | - | (410) | - | (410) | (4,000) |
| Royalty and WI payments | - | - | (1,225) | (306) | - | - | - | (1,172) | (293) | - | - | (1,204) | - | (4,200) |
| AP Payments | (900) | (10) | (950) | (10) | (950) | (10) | (950) | (10) | (950) | (10) | (5,450) | (10) | (950) | (11,160) |
| Total Operating Disbursements | (1,065) | (255) | (2,340) | (1,936) | (1,115) | (255) | (1,115) | (1,427) | (1,408) | (10) | (5,860) | (1,214) | (1,360) | (19,360) |
| Net Cash Flow from Operations | 3,223 | 1,583 | (2,310) | (1,936) | (1,115) | 5,605 | (1,085) | (1,427) | (1,408) | 6,008 | (5,860) | (1,184) | (1,360) | (1,266) |
| *Non-Operating Disbursements* | | | | | | | | | | | | | | |
| Restructuring Costs | - | - | - | - | - | (447) | (250) | (760) | - | - | (1,573) | - | (1,192) | (4,222) |
| Hedge Gain / (Loss) | - | - | 100 | - | - | - | - | 100 | - | - | - | - | - | 200 |
| Other | (50) | - | - | - | - | - | (75) | - | - | - | (75) | - | - | (200) |
| Total Non-Operating Disbursements | (50) | - | 100 | - | - | (447) | (325) | (660) | - | - | (1,648) | - | (1,192) | (4,222) |
| DIP Revolver Interest | - | - | - | - | - | - | (166) | - | - | - | (172) | - | - | (337) |
| DIP Fees / Other | (300) | - | - | (330) | - | - | (12) | - | - | - | (11) | - | - | (652) |
| Total Debt Service | (300) | - | - | (330) | - | - | (177) | - | - | - | (182) | - | - | (989) |
| **Net Cash Flow** | $ 2,873 | $ 1,583 | $ (2,210) | $ (2,266) | $ (1,115) | $ 5,158 | $ (1,587) | $ (2,087) | $ (1,408) | $ 6,008 | $ (7,690) | $ (1,184) | $ (2,552) | $ (6,478) |
| **Cash Balance and Liquidity** | | | | | | | | | | | | | | |
| Beginning (Book) Cash Balance | $ 2,176 | $ 5,048 | $ 6,631 | $ 4,421 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 2,176 |
| Net Cash Flow | 2,873 | 1,583 | (2,210) | (2,266) | (1,115) | 5,158 | (1,587) | (2,087) | (1,408) | 6,008 | (7,690) | (1,184) | (2,552) | (6,478) |
| DIP Revolver Draw / (Paydown) | - | - | - | 2,845 | 1,115 | (5,158) | 1,587 | 2,087 | 1,408 | (6,008) | 7,690 | 1,184 | 2,552 | 9,302 |
| Ending (Book) Cash Balance | 5,048 | 6,631 | 4,421 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| DIP Revolver Availability | - | - | - | 13,655 | 12,540 | 17,698 | 16,110 | 14,024 | 12,616 | 18,624 | 10,934 | 9,750 | 7,198 | 7,198 |
| **Total Liquidity (Book)** | $ 5,048 | $ 6,631 | $ 4,421 | $ 18,655 | $ 17,540 | $ 22,698 | $ 21,110 | $ 19,024 | $ 17,616 | $ 23,624 | $ 15,934 | $ 14,750 | $ 12,198 | $ 12,198 |
| *Ending Prepetition Revolver Balance* | $ 322,000 | $ 322,000 | $ 322,000 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 | $ 297,250 |
| *Ending DIP Revolver Balance* | $ - | $ - | $ - | $ 27,595 | $ 28,710 | $ 23,552 | $ 25,140 | $ 27,226 | $ 28,634 | $ 22,626 | $ 30,316 | $ 31,500 | $ 34,052 | $ 34,052 |